UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,          : 19-cr-00274(JBW)(VMS)
                                   :
        - versus -                 : U.S. Courthouse
                                   : Brooklyn, New York
STEPHEN COTOGNO,                   :
a/k/a Coty,                        :
a/k/a Steven Cotogno,              : August 1, 2019
                                   :
              Defendant            : 3:09 p.m.
------------------------------X

            TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
             BEFORE THE HONORABLE VERA M. SCANLON
              UNITED STATES MAGISTRATE JUDGE

A    P    P    E    A    R    A    N    C    E    S:


For the Government:        **Richard P. Donoghue, Esq.**
                           United States Attorney
                     BY: **Nicholas Moscow, Esq.**
                           Assistant U.S. Attorney
                           271 Cadman Plaza East
                           Brooklyn, New York  11201


For the Defendant:         LaRusso Conway & Bartling, LLP
                           300 Old country Rd. Suite 341
                           Mineola, NY 11501
                     BY: **Robert P. LaRusso, Esq.**



Transcription Service:     **Transcriptions Plus II, Inc.**
                           61 Beatrice Avenue
                           West Islip, New York 11795
                           laferrara44@gmail.com

Transcribed by:            **Jeanine Martelle**



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK:  Criminal cause for a plea hearing.

2   Case Number 19-cr-279 (sic), <u>United States v. Stephen</u>

3   <u>Cotogno</u>.

4          Counsel, can you state your name for the

5   record.

6          MR. MOSCOW:  Good afternoon, your Honor.

7          Nicholas Moscow, for the United States.  With

8   me at counsel table is William Bristo (ph), and intern in

9   our office.  I just, very briefly, I believe that the

10  number on this case is 19-cr-274, and it might have been

11  279 that was sent.  I just wanted to clarify that for the

12  record.

13         THE COURT:  Yes.

14         MR. LaRUSSO:  Robert LaRusso, for Mr. Cotogno

15  who is present in court, your Honor.

16         Good afternoon.

17         THE COURT:  Good afternoon.

18         So let me just make sure I have --

19         MR. MOSCOW:  Your Honor, Counsel is bringing to

20  my attention the fact that the defendant's first name is

21  also improperly listed on all paperwork associated with

22  this case.  While his name is Stephen, the docket and

23  information reflect the name S-t-e-v-e-n.  In reality the

24  defendant's first name is spelled S-t-e-p-h-e-n.

25         THE COURT:  All right.  So why don't I give you

Proceedings

1  everything and let you all initial it.  So what I have,

2  the waiver of indictment, the information, your elements

3  sheet, plea agreement, and the referral.  You could make

4  the correction, and the government should initial it, and

5  then defense counsel and Mr. Cotogno.

6          MR. LaRUSSO:  With your permission, your Honor,

7  we'll change the Steven to Stephen the way it is, and

8  then initial it?

9          THE COURT:  Yes.

10          MR. MOSCOW:  Okay.

11          Your Honor, if the court would issue a bounce

12  directing that the clerk of the court amend the caption,

13  that would be sufficient.  The government believes that

14  would be sufficient.

15          THE COURT:  So for each of the documents that I

16  have, which are the plea agreement, the information, the

17  order of referral, the waiver of an indictment form, and

18  the elements sheet, the defendant's first name has been

19  changed and now it's spelled S-t-e-p-h-e-n.

20          So for each, for the government, for defense

21  counsel, and for the defendant, each of you initialed

22  that change; is that correct, on those papers that I just

23  mentioned?

24          MR. LaRUSSO:  As the attorney for Mr. Cotogno,

25  yes, your Honor.

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          MR. MOSCOW:  Yes, your Honor, for the

3    government.

4          THE COURT:  All right.  Does defense counsel

5    agree it would appropriate for the court to order the

6    clerk's office to update the docket to reflect the

7    correct spelling of Mr. Cotogno's name?

8          MR. LaRUSSO:  Please, your Honor.

9          THE COURT:  All right.  So we'll include that

10   in the orders coming out of today's proceeding.

11          So in terms of what we're going to do here

12   today, it's going to be a little bit repetitive because,

13   as I understand what we're going to do here, is have the

14   case moved forward on an information, which includes

15   having a waiver of the indictment.  Then we'll have an

16   arraignment on that information.  At that point, that is

17   really the process that usually happens at the beginning

18   of a case, but as I'll explain, instead of moving forward

19   with the indictment, the information is substituting for

20   that so you want to make sure that, defendant, you know

21   the charges in that.

22          After that arraignment, at which you can enter

23   a plea of guilty or not guilty, we'll move on to what is

24   usually called "change of plea hearing," and the end of

25   that if you decide to plead guilty you can do that or

Proceedings

1  persist in your plea of not guilty.

2          I'm giving you that overview because some of

3  what we're going to do will be a little bit repetitive

4  because I'm asking you some of the same questions, so

5  that each piece of that -- there's three proceedings --

6  can stand alone and cover all the information that we

7  need to cover.

8          So let's first start by asking the government:

9  Are there any victims of the crime, and if so, have you

10 notified them of their right to appear and participate in

11 today's proceeding?

12         MR. MOSCOW:  Your Honor, the government does

13 not believe that there are victims of the crime.

14         THE COURT:  All right.  So I'm going to start

15 by asking my deputy to administer an oath to the

16 defendant.

17         THE CLERK:  Please stand and raise your right

18 hand.

19 S T E P H E N   C O T O G N O,

20     having been first duly sworn, was examined and

21     testified as follows:

22         THE CLERK:  Thank you, you can have a seat.

23         THE COURT:  All right.  So as we go along today

24 we're making a recording, and ultimately a transcript

25 will be prepared from the proceeding.  So whoever is

Proceedings

1  answering my questions, just make sure you're using a

2  microphone.

3          So for the defendant, I'm going to ask you some

4  background questions.

5          What's your full name?

6          THE DEFENDANT:  Stephen Cotogno.

7          THE COURT:  All right.  And the correct

8  spelling is, I believe, we went over?

9          THE DEFENDANT:  S-t-e-p-h-e-n.

10         THE COURT:  One thing throughout this, it's

11 helpful if you let me finish, and then I'll let you

12 finish because ultimately what will happen is the

13 district judge will read the transcript of the

14 proceeding.  So the only way to get a good transcript

15 from the recording is if it's clear and our voices are

16 not overlapping.

17         How old are you?

18         THE DEFENDANT:  Seventy-three.

19         THE COURT:  What's your highest level of

20 education?

21         THE DEFENDANT:  High school.

22         THE COURT:  Where did you go to high school?

23         THE DEFENDANT:  New Utrecht High School.

24         THE COURT:  Did you have any studies after you

25 graduated from high school?

Proceedings

1        THE DEFENDANT:  No, I did not.

2        THE COURT:  Any professional training?

3        THE DEFENDANT:  Only in the Army.

4        THE COURT:  What was your rank in the military?

5        THE DEFENDANT:  I got out as a PFC.

6        THE COURT:  Were you honorably discharged?

7        THE DEFENDANT:  Yes, I was.

8        THE COURT:  Do you have any difficulty

9  understanding or speaking English?

10        THE DEFENDANT:  No.

11        THE COURT:  Are you currently or have you

12  recently been under the care of any medical professional?

13        THE DEFENDANT:  Yes.

14        THE COURT:  For what medical conditions have

15  you been under a doctor's care?

16        THE DEFENDANT:  For my back.  I was hurt in the

17  Army and I'm paying for it now.

18        THE COURT:  Do you have a particular diagnosis?

19        THE DEFENDANT:  Spinal stenosis.

20        THE COURT:  What treatment are you receiving

21  for it?

22        THE DEFENDANT:  Well, right now I just finished

23  therapy; going back into it again.

24        THE COURT:  Physical therapy?

25        THE DEFENDANT:  Yes.

Proceedings

1        THE COURT:  Are you taking any medications?

2        THE DEFENDANT:  I take naproxen for my back.  I

3   also take Metformin for my diabetes.  I also take a

4   cholesterol pill which is -- I don't remember the name.

5   It's either -- losartan, I think, is for blood pressure,

6   and I don't remember the name for the blood pressure.

7        THE COURT:  Is it a statin --

8        THE DEFENDANT:  Yes.

9        THE COURT:  -- that you take for cholesterol?

10       THE DEFENDANT:  Yes, it is.

11       THE COURT:  And you take high blood pressure

12  medicine?

13       THE DEFENDANT:  And Vitamin D, yes.

14       THE COURT:  So is there anything about any of

15  the medications, the naproxen, Metformin, a statin, a

16  high blood pressure medication and/or Vitamin D that

17  affect your ability to understand what's going on here

18  today?

19       THE DEFENDANT:  Will not affect me.

20       THE COURT:  Is there anything about the pain

21  from spinal stenosis that affects your ability to

22  understand what's going on here today?

23       THE DEFENDANT:  Will not affect me.

24       THE COURT:  Okay.

25       Have you ever been hospitalized or treated for

Proceedings

1  an addition to drugs or alcohol?

2          THE DEFENDANT:  No, I have not.

3          THE COURT:  In the past 24 hours, besides the

4  -- well, let me ask, sorry, differently.

5          Have you taken today or within the last 24

6  hours the prescribed doses for each of the medicines that

7  you listed earlier?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And have you taken any other

10 medications, in addition to those?

11         THE DEFENDANT:  No.

12         THE COURT:  In the past 24 hours have you had

13 any alcoholic beverages?

14         THE DEFENDANT:  Yes, I had a glass of wine.

15         THE COURT:  When was that?

16         THE DEFENDANT:  Last night around 6:30.

17         THE COURT:  Is there anything about that glass

18 of wine that would affect your ability to understand

19 what's going on here today?

20         THE DEFENDANT:  No.

21         THE COURT:  In the past 24 hours have you taken

22 any narcotics?

23         THE DEFENDANT:  No.

24         THE COURT:  Are you represented by counsel here

25 today?

Proceedings

1            THE DEFENDANT:  Yes.

2            THE COURT:  What's your attorney's name?

3            THE DEFENDANT:  Robert LaRusso.

4            THE COURT:  Is he appointed or retained

5    counsel; meaning, did the court pay for him or are you

6    paying him?

7            THE DEFENDANT:  Retained.

8            THE COURT:  So there's a document called "the

9    information."

10           Have you seen this document?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Did you read it?

13           THE DEFENDANT:  Yes, I did.

14           THE COURT:  Do you understand the charge

15   against you?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  Did you go over it with your

18   attorney?

19           THE DEFENDANT:  Yes, I did.

20           THE COURT:  So I'm going to explain a little

21   bit of a few of your relevant rights here.

22           So you have the constitutional right to be

23   charged by an indictment, which would be offered or

24   presented by a grand jury.  But you have the right to

25   waive that right and you can consent to be charged with

Proceedings

1  the crime that's listed in the information, which is

2  material false statements by a document called "the

3  information." That document, the information, is

4  prepared by the Office of the United States Attorney for

5  this district.

6          Instead of having an indictment, the charge

7  against you is brought by the United States Government

8  through the Office of the United States Attorney by

9  filing the information with the clerk's office. So

10  unless you waive your right to be indicted, you can't be

11  charged with a felony, unless a grand jury finds by

12  returning the indictment that there's probable cause to

13  believe a crime has been committed and that you committed

14  the crime. So this document charges you with the felony

15  of material false statements.

16          Do you understand that?

17          THE DEFENDANT: Yes, I do.

18          THE COURT: So if you don't waive your right to

19  be indicted, the government may decide to present the

20  case to the grand jury and ask the grand jury to indict

21  you.

22          Just so you know, a grand jury is a group of at

23  least 16, but not more than 23 people. At least 12 grand

24  jurors would have to find that there's probable cause to

25  believe you've committed the crime with which you are

Proceedings

1   charged before you could be indicted. So if this case

2   were presented to the grand jury, the grand jury might

3   decide to indict you or they might decide not to indict

4   you.

5           If you waive your right to be indicted by the

6   grand jury, the case would proceed against you on this

7   document, the United States Attorney's Information, as

8   though you had been indicted.

9           So do you understand all of that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Have you discussed your right to be

12  indicted by the grand jury with your attorney?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you discussed waiving that

15  right with your attorney?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand all of your

18  rights associated with an indictment by a grand jury?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  Has anyone threatened you or made

21  any promises to you to get you to waive your right to be

22  indicted by a grand jury?

23          THE DEFENDANT:  No.

24          THE COURT:  Do you wish to waive your right to

25  indictment by a grand jury?

Proceedings

1      THE DEFENDANT:  Yes.

2      THE COURT:  All right.  Mr. LaRusso, is there

3  any reason that Mr. Cotogno should not waive his right to

4  be indicted by the grand jury?

5      MR. LaRUSSO:  No, your Honor.

6      THE COURT:  Okay.  So starting with the first

7  page.  The first document is that information, the one

8  that I showed you earlier.  And the second document --

9  this was also amended to reflect the correct spelling of

10  your name -- this is the document called waiver of

11  indictment.  I'm holding that up.

12      Have you seen this document?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Did you read it?

15      THE DEFENDANT:  Yes, I did.

16      THE COURT:  Did you go over it with your

17  attorney?

18      THE DEFENDANT:  Yes, I did.

19      THE COURT:  Do you understand it?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Are the statements in it correct?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Is the first signature on the page

24  -- I'm holding it up -- is that your signature?

25      THE DEFENDANT:  Yes, it is.

Proceedings

1          THE COURT:  Below that, Mr. LaRusso, is that

2    your signature?

3          MR. LaRUSSO:  It is, your Honor.

4          THE COURT:  All right.  So I'm going to sign it

5    to confirm that I believe the defendant is making a

6    voluntarily, knowing, and informed decision to waive his

7    right to proceed with an indictment, and instead this

8    case is going to proceed on the information.

9          So that was basically part one.

10         Part two is an arraignment on the information.

11   So I'm going to tell you two things, which you, I hope,

12   already know.  But the first is that you have the right

13   to remain silent.  That means you don't need to say

14   anything.  Anything you do say, except to your attorney,

15   may be used against you.

16         The second is, you have the right to be

17   represented by an attorney, and if you can't afford one,

18   the court will appoint an attorney to represent you.

19         I understand Mr. LaRusso has been retained,

20   correct?

21         THE DEFENDANT:  Yes.

22         THE COURT:  As I mentioned earlier, there's

23   this document called "the information," which charges you

24   with material false statements.

25         So you've seen this document, correct?

1    THE DEFENDANT:  Yes, I have.

2    THE COURT:  Did you read it?

3    THE DEFENDANT:  Yes, I did.

4    THE COURT:  Did you go over it with your

5  attorney?

6    THE DEFENDANT:  Yes, I did.

7    THE COURT:  And do you understand it?

8    THE DEFENDANT:  Yes, I do.

9    THE COURT:  So at this point do you want to

10  enter a plea of guilty or not guilty?  This is the

11  arraignment stage?

12    MR. LaRUSSO:  My client is unfamiliar with the

13  procedural aspects, but I will advise him, your Honor, to

14  enter a not guilty plea at this time, knowing that when

15  we go to the next phase he'll enter a plea of guilty to

16  the information.  He will also waive the reading of the

17  charges publicly.

18    THE COURT:  Okay.  Are you in agreement with

19  what your attorney just said?

20    THE DEFENDANT:  Yes, I am.

21    THE COURT:  All right, that's step two.

22    The beginning of this will a little bit

23  repetitive.  Let me ask the government, again, are there

24  any victims to this offense, and if so, has the

25  government fulfilled its obligation to notify them of the

Proceedings

1   hearing and their right to attend and be heard?

2          MR. MOSCOW:  The government believes it has

3   notified the victims to the extent that it was required

4   to do so, your Honor.  As indicated earlier, the

5   government does not believe that there are victims to

6   this offense.

7          The one caveat that I should add is that there

8   is restitution ordered in the plea agreement that would

9   go to the victims of the wire fraud that is related to

10  the false statements, to the extent that they are not

11  victims of the false statements crime with which the

12  defendant is charged in the information.  They are not

13  victims under the victim notification requirements.

14         MR. LaRUSSO:  Your Honor, we agree with that

15  statement and indicate on the record that in our

16  discussions with the government, the agreed upon amount

17  was the actual sale of the alleged goods belonging to the

18  other individuals involved in the wire fraud, and the

19  total amount would be $3,953.76, which was put into an

20  account and the money is available and we made available

21  to the government once we know who to make it out to.

22  That's the issue on restitution.

23         THE COURT:  Okay.  All right, we'll revisit

24  that in a little bit.

25         So, Mr. Cotogno, I remind you that you've taken

Proceedings

1  an oath earlier to tell truth and that continues

2  throughout this proceeding.  So it applies to all the

3  questions that I'm going to be asking you.

4         Do you understand that?

5         THE DEFENDANT:  Yes.

6         THE COURT:  Let me ask you:  You're comfortable

7  understanding English and speaking English; is that

8  correct?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Have you had any difficulty

11 communicating in this case, including with your attorney?

12        THE DEFENDANT:  No.

13        THE COURT:  All right.  So as you may know,

14 this case has been assigned to District Judge Weinstein,

15 so Judge Weinstein is the judge who will make the

16 ultimate decision as to whether to accept your guilty

17 plea, if that's what you decide to enter, and if he does

18 accept it, to sentence you.

19        So you have the right to have Judge Weinstein

20 listen to your plea without any prejudice to you.

21        Do you understand?

22        THE DEFENDANT:  Yes, I do.

23        THE COURT:  As I mentioned earlier, we're

24 making a recording of today's proceeding, and a

25 transcript will be prepared of that recording by a court

Proceedings

1  reporter, and it will be provided to Judge Weinstein.

2  Judge Weinstein will review the transcript of today's

3  proceeding in connection with deciding whether to accept

4  your plea, and if he does, with your sentence.

5           Do you understand?

6           THE DEFENDANT:  Yes, I do.

7           THE COURT:  Do you wish to give up your right

8  to have Judge Weinstein listen to your plea and instead

9  proceed here before me today?

10          THE DEFENDANT:  Proceed today.

11          THE COURT:  But with me not with Judge

12  Weinstein?

13          THE DEFENDANT:  Yes, with the magistrate Judge.

14  I'm sorry.

15          THE COURT:  Okay.  So in connection with that

16  decision, I have this document, this order of referral,

17  which the top part of it is Judge Weinstein asking me to

18  do today's proceeding, and then at the bottom it says

19  what it says, but in sum: You've consented to proceeding

20  before me.

21          Can you see the page that I'm holding up?

22          THE DEFENDANT:  I see the page, yes.

23          THE COURT:  Have you read this form?

24          THE DEFENDANT:  Yes, I have.

25          THE COURT:  You understand it?

Proceedings

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Did you have a opportunity to go

3   over it with your attorney?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  All right.  And are you in

6   agreement with what it says?

7          THE DEFENDANT:  Yes, I am.

8          THE COURT:  At the bottom the first signature,

9   is that yours?

10          THE DEFENDANT:  Yes, it is.

11          THE COURT:  And then, Mr. LaRusso, below that,

12   is that your signature?

13          MR. LaRUSSO:  It is, your Honor.

14          THE COURT:  And then for the government, I'm

15   not sure whose signature that is.  Is it yours or your

16   colleague's?   We'll show it to you.

17          MR. MOSCOW:  Thank you, your Honor.  My

18   eyesight is not as good as the defendant's.

19          That's my signature, your Honor.

20          THE COURT:  All right.  So Mr. Cotogno do you

21   give your consent voluntarily and of your own free will

22   to proceed here before me today?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Has anyone made any threats or

25   promises to you to get you to agree to this plea hearing

Proceedings

1   before me today?

2          THE DEFENDANT:  No.

3          THE COURT:  So based on what's been said here

4   today by the attorneys and by the defendant, I believe

5   Mr. Cotogno is knowingly and voluntarily in an informed

6   way waiving his right to proceed before Judge Weinstein

7   and instead proceed before me here today.

8          So I signed the bottom of that form.

9          As we go along today I'm going to have to ask

10  you a number of questions in order to assure myself that

11  your plea is, in fact, a valid plea.  So if you don't

12  understand what I'm asking, please let me know, and I'll

13  try to clarify what I've said.

14         So as we go along do you understand that you

15  have the right to be represented by an attorney at trial

16  and at every other stage of the criminal proceeding,

17  including today's proceedings?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  And you understand that if you

20  can't afford counsel, counsel will be appointed to

21  represent you?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  I understand that Mr. LaRusso is

24  retained counsel; is that right?

25         THE DEFENDANT:  Yes, he is.

1          THE COURT:  So as we go along if at any time

2    you'd like to consult with him, please let me know, and

3    I'll let you do so.

4          Do you understand?

5          THE DEFENDANT:  Okay, thank you.

6          THE COURT:  I will remind you again you swore

7    earlier with the oath that Ms. Quinlan administered to

8    tell the truth.

9          So that means that if at any time you answer my

10   questions falsely, those answers may later be used

11   against you in a separate prosecution for the crime of

12   perjury or making a false statement.

13         Do you understand?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  So we're going to over briefly the

16   same background questions asked before.

17         For the record, what's your full name?

18         THE DEFENDANT:  Stephen Cotogno.

19         THE COURT:  How old are you?

20         THE DEFENDANT:  Seventy-three.

21         THE COURT:  Was high school the highest level

22   of education that you completed?

23         THE DEFENDANT:  Yes.

24         THE COURT:  After that you served in the

25   military; is that correct?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you were honorably discharged?

3          THE DEFENDANT:  Yes.

4          THE COURT:  With regard to the question: Have

5    you recently been under the care of a physician, it's

6    been for back issues, correct?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  And you have recently

9    had physical therapy for your back, right?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And that was for spinal stenosis?

12          THE DEFENDANT:  Yes.

13          THE COURT:  So is there anything about your

14    back conditions that would interfere with your ability to

15    understand these proceedings here today?

16          THE DEFENDANT:  No.

17          THE COURT:  And you also have some other

18    medical conditions that are treated with various

19    medicines, including: Naproxen, which is for your back;

20    Metformin for diabetes; statin for cholesterol; you take

21    a high blood pressure medicine; you also take Vitamin D.

22          Is that correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Is there anything about either

25    those medications or the underlying medical conditions

Proceedings

1 that they treat that would interfere with your ability to

2 understand what's going on here today?

3          THE DEFENDANT:  No, they will not.

4          THE COURT:  All right.  Do you have any other

5 medical conditions that are being treated?

6          THE DEFENDANT:  Not at the moment.

7          THE COURT:  Okay.  Well, do you have any

8 recently that should be of concern?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you ever been treated or

11 hospitalized for mental illness?

12          THE DEFENDANT:  No.

13          THE COURT:  Have you ever been treated or

14 hospitalized for any addition to drugs or alcohol?

15          THE DEFENDANT:  No.

16          THE COURT:  Are you presently under the

17 treatment of a doctor or -- sorry -- a medical

18 professional, such as a psychiatrist, psychologist, or

19 social worker?

20          THE DEFENDANT:  No.

21          THE COURT:  In the past 24 hours have you

22 consumed any narcotic drugs?

23          THE DEFENDANT:  No.

24          THE COURT:  In the past 24 hours you mentioned

25 that you had some wine last night; is that right?

Proceedings

1          THE DEFENDANT:  Yes, I did.

2          THE COURT:  Did you have any other alcohol in

3   the last 24 hours?

4          THE DEFENDANT:  No.

5          THE COURT:  So is your mind clear as you sit

6   here today?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And you understand these

9   proceedings; is that correct?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  All right.  Counsel, Mr. LaRusso,

12   have you discussed this case with your client?

13          MR. LaRUSSO:  I have, your Honor.

14          THE COURT:  Have you had any difficulty

15   communicating with him?

16          MR. LaRUSSO:  None whatsoever.

17          THE COURT:  In your opinion is he capable of

18   understanding the nature of these proceedings?

19          MR. LaRUSSO:  He is, your Honor.

20          THE COURT:  In your opinion does he understand

21   the rights he will be waiving, if he goes ahead with a

22   guilty plea?

23          MR. LaRUSSO:  He does.

24          THE COURT:  Do you have any doubt as to his

25   competence to plead at this time?

Proceedings

1          MR. LaRUSSO:  None, your Honor.

2          THE COURT:  Have you explained to him the

3 operation of the sentencing guidelines?

4          MR. LaRUSSO:  I have.

5          THE COURT:  In your opinion does he understand

6 those guidelines?

7          MR. LaRUSSO:  He does, your Honor.

8          THE COURT:  Mr. Cotogno, have you had

9 sufficient opportunity to discuss this case with your

10 attorney?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  Have you had any difficulty

13 communicating with him?

14          THE DEFENDANT:  No, I have not.

15          THE COURT:  Are you fully satisfied with the

16 legal representation and advice given to your by

17 Mr. LaRusso in this case?

18          THE DEFENDANT:  Yes, I am.

19          THE COURT:  And it's correct that you received

20 a copy of the information, right?  That was the

21 document --

22          THE DEFENDANT:  Yes.

23          THE COURT:  -- that has the charge in it?

24          THE DEFENDANT:  Yes, I have.

25          THE COURT:  And you read it, correct?

Proceedings

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  And you understand it?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Mr. LaRusso, do you want me to read

5   the information out loud?

6          MR. LaRUSSO:  That's not necessary, your Honor.

7   We've gone over it several times.

8          THE COURT:  Okay.  So, Mr. Cotogno, I'm going

9   to explain some of your rights in a criminal proceeding.

10          The first and most important thing you need to

11   know is you don't have to plead guilty, even if you are

12   guilty.  Under the American legal system, the government

13   or the prosecution has the burden of proving the guilt of

14   a defendant beyond a reasonable doubt.  So were the

15   government to fail in carrying out that burden, at trial

16   the jury has the duty to find the defendant not guilty,

17   even if the defendant is, in fact, guilty.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  So for you, you have a choice.

21   It's up to you to decide what to do in your case.  It's

22   not your lawyer's choice or your family's choice or

23   anyone else's choice.  It's solely your choice.  You may,

24   when we get to the end of this process, withdraw your

25   previously entered plea of not guilty and plead guilty,

Proceedings

1  as I'm told you wish to do, or you can choose to go to

2  trial by persisting in your plea of not guilty.

3          If you do that the government will need to meet

4  its burden of proving your guilt beyond a reasonable

5  doubt, and if the government fails in that, the jury will

6  have the obligation to find you not guilty.

7          Do you understand all of that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  So for you, you have a choice.  You

10  can decide to change your plea of not guilty to guilty or

11  you can say that the government prove the case against

12  me.  If you'd like to do that, you'd persist in your plea

13  of not guilty when I ask you how you plead.

14          If you plead not guilty under the constitution

15  and laws of the United States, you're entitled to a

16  speedy and public trial by a jury with the assistance of

17  an attorney on the charge contained in the information.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  At trial you would be presumed

21  innocent.  You wouldn't have to prove your innocence.  It

22  would be the government's burden to overcome that

23  presumption and prove you guilty by competent evidence

24  and beyond a reasonable doubt.

25          Do you understand?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  If the government fails, as I

3    mentioned earlier, the jury would have the duty to find

4    you not guilty.

5          By pleading guilty you're giving up your right

6    to have the government satisfy its burden of proving that

7    you are guilty beyond a reasonable doubt.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  You'll be admitting your guilt.  So

11    were there to be a trial in this case, witnesses for the

12    government would have to come to court and testify in

13    your presence.  Your attorney would have the right to

14    cross examine them.  Your attorney would have the right

15    to object to evidence offered by the government, to offer

16    witnesses and other evidence on your behalf, and to

17    subpoena or to compel witnesses to come to court and

18    testify.

19          Do you understand?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  So if you decide to plead guilty

22    and I recommend to Judge Weinstein that he accept your

23    plea, and that's what he does, you're giving up these

24    rights:  You're giving up your right to confront

25    witnesses who would testify against you; you're giving up

Proceedings

1  your right to offer evidence on your own behalf; you're

2  giving up your right to compel witnesses to come to court

3  and testify; and you're giving up your right to raise any

4  defenses that you may have.

5          Do you understand?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  At a trial in this case you would

8  have the right to testify in your own behalf, if you

9  chose to do so; but, you couldn't be required to testify.

10  Under the Constitution of the United States a defendant

11  in a criminal case cannot be forced to take the witness

12  stand at his own trial and say anything that could be

13  used against him to show that he's guilty of the crime or

14  crimes with which he's been charged.

15          If you were to decide not to testify at your

16  own trial, the judge would instruct the jury that the

17  jury could not hold that fact against you.  This is

18  exercising your right against self-incrimination.  It's

19  sometimes referred to as "taking the fifth."

20          Do you understand it?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  All right.  So by pleading guilty

23  you'll be admitting your guilt and giving up this right

24  because you'll be admitting that you did something wrong.

25          Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you plead guilty I'm going to

3    have to ask you questions about what you did, in order to

4    satisfy myself, and in turn Judge Weinstein, that you are

5    in fact guilty of the crime to which you are pleading

6    guilty.  You'll need to answer those questions truthfully

7    and acknowledge your guilt, and you're going to answer

8    those questions subject to the oath that you took earlier

9    from Ms. Quinlan.

10             Do you understand that?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  So it's not going to be enough for

13   you simply to say that you're guilty.  You're going to

14   have to tell me what it is that you did, such that you

15   are guilty the particular charge to which you are

16   pleading guilty.

17             THE DEFENDANT:  Okay.

18         THE COURT:  So if you plead guilty and I

19   recommend to Judge Weinstein that he accept your plea and

20   he does that, you're giving up your constitutional right

21   to a trial and to all the other rights that I just went

22   over.  There won't be a trial in your case.

23             If Judge Weinstein accepts your plea of guilty,

24   he will simply enter a judgment of guilty on the basis of

25   your plea.

Proceedings

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  If after you are sentenced you or

4    your attorney thinks that the court has not followed the

5    law in sentencing you, you can usually appeal your

6    sentence to a higher court.  But by pleading guilty,

7    except under limited circumstances, you will not be able

8    to challenge the judgment of conviction, either directly

9    by appeal or indirectly by a collateral attack.

10          Do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  I'm looking for the right part of

13    your plea agreement.

14          So I just went over some of the limitations on

15    your appellate right.  I mentioned the point that if you

16    didn't think that the judge had properly followed the law

17    in sentencing you, you could appeal your sentence to a

18    higher court.  Your plea agreement, which we're going to

19    go over in some detail in a few minutes, includes an

20    additional limitation on that right.

21          So in paragraph four, which is on page three of

22    the plea agreement, it says, "The defendant agrees not to

23    file an appeal or otherwise challenge by petition

24    pursuant to 28 USC 2255 or any other provision the

25    conviction or sentence, in the event that the court

1  imposes a term of imprisonment of six months or below."

2          So do you understand that limitation?

3          THE DEFENDANT:  Yes, I do.  Yes.

4          THE COURT:  Did you go over it with your

5  attorney?

6          THE DEFENDANT:  Yes, I did.

7          THE COURT:  Okay.  So are you willing to give

8  up your right to a trial and all the other rights that I

9  just went over?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So now we're going to go over this

12  plea agreement in some detail.

13          Just for the record I've marked it as Court

14  Exhibit 1.

15          Actually, I think the one that you corrected

16  the spelling was actually not the final signed copy.  So

17  if you don't mind, can you look at it, the caption on the

18  front, and then on the signature page the spelling of

19  Stephen should be corrected.  So actually I think Stephen

20  is also in the first full paragraph of the plea

21  agreement.  The one that you noted before was the draft

22  copy.

23          Okay.  So on the original plea agreement the

24  spelling of Stephen was corrected on the caption, the

25  first paragraph, and the last page to spell Stephen with

Proceedings

1    a "P-H."

2            So for the government, for defense counsel, and

3    for Mr. Cotogno, you all initialed those changes,

4    correct?

5            THE DEFENDANT:  Yes, I did.

6            MR. MOSCOW:  That's correct, your Honor.

7            MR. LaRUSSO:  That is correct, your Honor.

8            THE COURT:  All right.  So as I said, the plea

9    agreement I'm referring to it as Court Exhibit 1.

10           On the last page of that agreement in the

11   middle of the page, it says, "I have read the entire

12   agreement and discussed it with my attorney.  I

13   understand all of its terms, and I'm entering into it

14   knowingly and voluntarily."

15           So, Mr. Cotogno, are those correct statements?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  And then I'm going to hold up my

18   copy of the agreement.  Is that your signature on the

19   last page?

20           THE DEFENDANT:  Yes, it is.

21           THE COURT:  And then Mr. LaRusso below that?

22           MR. LaRUSSO:  That's my signature, your Honor.

23           THE COURT:  And the Mr. McDonald who signed for

24   the government?

25           MR. MOSCOW:  That's correct, your Honor.

Proceedings

1          THE COURT:  And then --

2          MR. MOSCOW:  Ms. Shihata signed it as the

3   supervisor, your Honor.

4          THE COURT:  Okay.  So, Mr. LaRusso, were all

5   formal plea offers by the government conveyed to

6   Mr. Cotogno?

7          MR. LaRUSSO:  They were, your Honor.

8          THE COURT:  So, Mr. Cotogno, you've read this

9   document, the one I've marked as Court Exhibit 1, the

10  plea agreement?

11         THE DEFENDANT:  Yes, I have.

12         THE COURT:  And did you have any difficulty

13  reading it?

14         THE DEFENDANT:  No.

15         THE COURT:  Not a bit?

16         MR. LaRUSSO:  There were some parts, Judge,

17  like the Hyde Amendment I had to explain to him, but for

18  all intents and purposes, he understands all the

19  paragraphs from my point of view.

20         THE COURT:  Okay.  So you went over it with

21  your attorney then; is that correct?

22         THE DEFENDANT:  Yes, I have.

23         THE COURT:  At this point now, do you

24  understand all the terms of the agreement?

25         THE DEFENDANT:  Yes, I do.

1          THE COURT:  Does this written plea agreement,

2    which I've marked as Court Exhibit 1, accurately

3    represent the entire understanding or agreement that

4    you've entered into with the United States Government?

5          THE DEFENDANT:  Yes, it does.

6          THE COURT:  Has anyone made any promise or

7    assurance to you not included in this document to

8    persuade you to accept it?

9          THE DEFENDANT:  No.

10          THE COURT:  Has anyone threatened you in any

11    way to persuade you to accept the plea agreement?

12          THE DEFENDANT:  No.

13          THE COURT:  Mr. LaRusso, have you read this

14    entire agreement?

15          MR. LaRUSSO:  Yes, I have, your Honor.

16          THE COURT:  And does it reflect your

17    understanding of the entire agreement that Mr. Cotogno is

18    entering into with the United States Government?

19          MR. LaRUSSO:  It does.

20          THE COURT:  Mr. Cotogno, do you understand that

21    if you fail to fully comply with the agreement that

22    you've entered into with the government, the United

23    States Government will be released from its obligations

24    to you, but you won't be released from your plea?

25          THE DEFENDANT:  Yes.

1          THE COURT:  All right.  I'm going to go over

2    the sentencing scheme, which is outlined in paragraph one

3    of the agreement.

4          So with regard to the count in the information

5    which charges you with a violation of 18 USC 1001(a)(2),

6    the count carries the following statutory penalties:

7          A maximum term of imprisonment of five years,

8    and a minimum term of imprisonment of zero years.

9          Do you understand that?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  A maximum supervised release term

12   of three years.  It would follow any term of

13   imprisonment.  Were you to violate a condition of

14   release, you could be sentenced for up to two years

15   without receiving credit for pre-release imprisonment or

16   time previously served on post-release supervision.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  The maximum fine that can be

20   imposed is one of $250,000.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  We touched on this earlier.  You

24   have agreed between yourself and the United States

25   Government that restitution will be an amount of

Proceedings

1  $3,953.76, should it be ordered by the court.

2          THE DEFENDANT:  Yes.

3          THE COURT:  And you have to be charged $100

4  special assessment.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand there's no parole

8  in the federal system, so if you're sentenced to a prison

9  term, you wouldn't be release on parole?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you want to talk to your lawyer

12  about that?

13          THE DEFENDANT:  No, no.

14          THE COURT:  Okay.  Mr. LaRusso, is your client

15  a US citizen?

16          MR. LaRUSSO:  Yes, he is, your Honor.

17          THE COURT:  All right.  I raise that issue

18  because if you were not a United States citizen it may be

19  that the conviction could have serious immigration

20  consequences for you.

21          So the way the sentencing process works is that

22  the sentencing judge does not have complete discretion to

23  impose a penalty outside of the statutory maximum and

24  minimum sentences that are set forth in the statute.  So

25  we just went over what those are for you, which in

Proceedings

1  paragraph one the maximum term of imprisonment will be

2  five years, the minimum is no time in prison.

3           Do you understand?

4           THE DEFENDANT:  Yes, I do.

5           THE COURT:  So in terms of how the sentencing

6  process goes, the first thing the judge does is consider

7  the advisory sentencing guidelines.  They've been issued

8  by the United States Sentencing Commission to help a

9  judge determine what's a reasonable sentence in a

10  criminal case.

11           As the second step the judge considers whether

12  there are any factors in your case that will allow the

13  judge to depart from those advisory sentencing

14  guidelines.  A judge can depart upwardly or downwardly.

15           Third, the judge considers factors that are set

16  forth in a particular federal statute.  We refer to it as

17  18 USC 3553(a).  The judge takes the list of factors in

18  the statute and considers them against all the facts and

19  circumstances of your case.  It might be that the judge

20  decides to give you what's called a "guidelines sentence"

21  or a "non-guidelines sentence."  The practical point is,

22  until the date of sentencing, until the judge has read

23  the transcript from today's proceeding, read a pre-

24  sentence report that will be prepared about you, and

25  heard from the government, from your lawyer, and from

1  you, you can't know with certainty what the sentencing

2  guidelines will be for your case or what the judge's

3  sentence will be.

4         Do you understand?

5         THE DEFENDANT:  Yes.

6         THE COURT:  So you can't know ahead of time

7  whether there will be grounds for the judge to depart

8  from those sentencing guidelines and whether the judge

9  would impose a guidelines sentence or a non-guidelines

10 sentence.

11        So do you understand that?

12        THE DEFENDANT:  Yes, I do.

13        THE COURT:  All right.  Even though there is

14 uncertainty, I'm going to ask the attorneys to give me

15 their best estimates as to what they believe the advisory

16 sentencing guidelines would say for your case.

17        Let's start with the government.

18        MR. MOSCOW:  Your Honor, the government

19 estimates that the sentencing guidelines would yield a

20 range of imprisonment of zero to six months, assuming

21 that the defendant falls within criminal history category

22 one, which is where the government believes that he

23 falls.

24        THE COURT:  All right.  And that's outlined in

25 paragraph two of the plea agreement; is that right?

1      MR. MOSCOW:  That's correct, your Honor.

2      THE COURT:  And then for the defendant?

3      MR. LaRUSSO:  Your Honor, the plea agreement

4  was the result of discussions with Mr. McDonald from the

5  US Attorney's Office, and we agree with the calculations

6  as set forth.

7      THE COURT:  Okay.  So, Mr. Cotogno, in

8  paragraph two the attorneys' view of the sentencing

9  guidelines are set forth in that paragraph, and at the

10  conclusion of the paragraph it provides that you

11  stipulate to the above guidelines calculation.

12      So do you understand paragraph two in the plea

13  agreement?

14      THE DEFENDANT:  Yes, I do.

15      THE COURT:  Did you have an adequate

16  opportunity to review it with your attorney?

17      THE DEFENDANT:  Yes, I did.

18      THE COURT:  And did you review it with your

19  attorney?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Are you in agreement with what it

22  says?

23      THE DEFENDANT:  Yes, I am.

24      THE COURT:  So do you understand that the

25  estimates here aren't binding on the court in deciding

Proceedings

1  what sentence to give you?

2          THE DEFENDANT:  Yes.

3          THE COURT:  It's also not binding on the

4  government or probation.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that if the

8  guideline estimates that are provided here or have been

9  discussed with you are wrong, that won't be the basis for

10 you to withdraw your plea?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  And that your ultimate sentence

13 could turn out to be entirely different from any estimate

14 your attorney or the government may have given you.

15         Do you understand that?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  So it could turn out that because

18 of various sentencing factors, Judge Weinstein decides to

19 impose a higher sentence than the one called for in the

20 advisory sentencing guidelines.  For that to turn out to

21 be the case, you wouldn't be allowed to withdraw your

22 guilty plea simply because no one could tell you in

23 advance of sentencing what your sentence would be.

24         Do you understand that?

25         THE DEFENDANT:  Yes, I do.

Proceedings

1          THE COURT:  Okay.  So let's just look at the

2    rest of the plea agreement.  There are a few more

3    paragraphs in it.  There's paragraph three, four, five,

4    six, and seven.

5          Have you read all of those paragraphs?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  Did you have an adequate

8    opportunity to review them with your attorney?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  Did you in fact review them with

11   your attorney?

12         THE DEFENDANT:  Yes, we did.

13         THE COURT:  Are you in agreement with what they

14   say?

15         THE DEFENDANT:  Yes.

16         THE COURT:  So do you understand what's being

17   proposed is that you're going to pleading guilty to a

18   felony?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that if your plea

21   is accepted and you're adjudged guilty of a felony, that

22   adjudication could result in various deprivations of

23   civil rights, including the right to vote, hold public

24   office, serve on a jury, possess a firearm, and other

25   rights?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  So I've gone over with you many of

3   the possible consequences to you, if the judge accepts

4   your plea of guilty.

5          Do you understand all of these consequences?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Did you have an adequate

8   opportunity to review them with your attorney?

9          THE DEFENDANT:  Yes, I did.

10          THE COURT:  And did you review them with your

11  attorney?

12          THE DEFENDANT:  Yes, I did.

13          THE COURT:  Okay.  We've got to make sure.  We

14  don't want anybody going into this not knowing.

15          So I'm going to switch gears here and ask the

16  government -- so I have a sheet from the government

17  called the "elements sheet."  This was provided by

18  Mr. McDonald, but Mr. Moscow have you had an opportunity

19  to review it?

20          MR. MOSCOW:  I have, your Honor.

21          THE COURT:  Do you believe the statements in

22  this are correct?

23          MR. MOSCOW:  I do, your Honor.

24          THE COURT:  All right.  And then, Mr. LaRusso,

25  have you read this elements sheet?

Proceedings

1      MR. LaRUSSO:  I did.

2      THE COURT:  Do you believe it's correct?

3      MR. LaRUSSO:  I do, your Honor.

4      THE COURT:  So for the government, what

5 evidence would the government offer at trial in order to

6 show the defendant's guilt as to the single charge in the

7 information?

8      MR. MOSCOW:  Your Honor, the government would

9 rely heavily on the testimony of commerce agents to whom

10 the defendant made the statement, as charged on February

11 9, 2016, and to whom the defendant made subsequent

12 statements reversing course and providing accurate

13 information to replace the fictitious information that he

14 had provided on that date.  So both the evidence of the

15 initial false statement and the evidence of the falsity

16 of the statement could be proven by testimony of commerce

17 agents.

18      They would also be able to testify that at the

19 time they were engaged in a federal investigation and the

20 misrepresentation made by the defendant was material to

21 that investigation.

22      THE COURT:  Mr. LaRusso, do you agree based on

23 the evidence that the government would propose to offer

24 at trial?  The government would be able to prove beyond a

25 reasonable doubt Mr. Cotogno's guilt with regard to the

Proceedings

1  charge in the information.

2          MR. LaRUSSO:  I do, your Honor.

3          THE COURT:  Do you know of any reason why

4  Mr. Cotogno should not plead guilty?

5          MR. LaRUSSO:  None, your Honor.

6          THE COURT:  In your professional opinion, is

7  entering a plea agreement with the government and

8  pleading guilty to the single count in the information in

9  his best interest?

10         MR. LaRUSSO:  It most certainly is, your Honor.

11         THE COURT:  Okay. All right.

12         So, Mr. Cotogno, are you ready to plead at this

13  time?

14         THE DEFENDANT:  Yes, I am.

15         THE COURT:  Would you like an opportunity to

16  speak with Mr. LaRusso before you do so?

17         THE DEFENDANT:  No.

18         THE COURT:  Okay.  So as to the single count in

19  the information, which is material false statements in

20  violation of 18 USC 1001(a)(2), how do you plead, guilty

21  or not guilty?

22         THE DEFENDANT:  Guilty.

23         THE COURT:  As I said earlier I have to ask you

24  what it is that you did such that you are, in fact,

25  guilty of this count.

Proceedings

1        So in your own words if you could tell me what

2   you did.

3        MR. LaRUSSO:  Your Honor, if I could.  My

4   client and I had gone over a typed series of statements

5   that he would like to send to the court has his view of

6   the facts that support the charge.  He understands that

7   if the court has additional questions, that he will be

8   ready to answer any other questions.

9        May he now proceed to read?

10        THE COURT:  Yes, that's fine.

11        THE DEFENDANT:  On or about February 9 I spoke

12   to federal agents from the Department of Commerce.

13        THE COURT:  What year?  February 9 what year?

14        THE DEFENDANT:  2016.

15        THE COURT:  Okay.

16        THE DEFENDANT:  At my warehouse in Staten

17   Island.  I was asked questions about a person from Omni

18   Metals Corporation who rented the space in my warehouse.

19   I replied that John Heck (ph) from Omni rented a storage

20   space and loaded containers of scrap metal.  I gave the

21   description of that person that rented the premise, and I

22   knowingly and wilfully gave a false name and description

23   to the person who rented that space.  The person who

24   actually was renting the space was Guy Cardinale.

25        I'm going to ask counsel your view as to

Proceedings

1  whether that was material or the government be able to

2  show it was material?

3          MR. MOSCOW:  Your Honor, yes, and the

4  government would also be able to show that the

5  description of the person was made in a manner that

6  pertained to a federal investigation and was, therefore,

7  within the jurisdiction of the United States.

8          MR. LaRUSSO:  Your Honor, with my understanding

9  of the nature of the investigation, I would agree with

10  both of those statements.

11          THE COURT:  All right.  So, Mr. Cotogno, do you

12  understand what the government said?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Are you in agreement with that?

15          THE DEFENDANT:  Yes, I am.

16          THE COURT:  So for the government, is that a

17  satisfactory allocution?

18          MR. MOSCOW:  It is, your Honor.

19          THE COURT:  Mr. LaRusso, is there anything else

20  you would like your client to add to the record with

21  regard to that allocution?

22          MR. LaRUSSO:  Not at this point, your Honor.

23          THE COURT:  Okay.  The government, you agree

24  this happened in Staten Island?  That's the basis for

25  venue?

Proceedings

1          MR. MOSCOW:  Yes, your Honor, within the

2    Eastern District of New York as this was all in Staten

3    Island.

4          THE COURT:  Let me ask you a few more

5    questions, Mr. Cotogno.

6          Are you pleading guilty voluntarily and of your

7    own free will?

8          THE DEFENDANT:  Yes, I am.

9          THE COURT:  Has anyone threatened you or made

10   any promises to you, other than those included in the

11   plea agreement, to get you to enter your plea of guilty

12   at this time?

13         THE DEFENDANT:  No.

14         THE COURT:  Has anyone made any threats to you?

15         THE DEFENDANT:  No.

16         THE COURT:  Has anyone made any promise to you

17   as to what your final sentence will be?

18         THE DEFENDANT:  No.

19         THE COURT:  Are you pleading guilty of your own

20   free will because you are, in fact, guilty of the single

21   count in the information?

22         THE DEFENDANT:  Yes, I am.

23         THE COURT:  Based on the information given to

24   me here today, I believe that Mr. Cotogno is fully

25   competent; that he is capable of entering an informed

1   plea; that he's acting voluntarily; that he understands

2   the nature of the charge against him in the information;

3   that he understands his rights and the consequences of

4   his plea; and that there is a factual basis for the plea

5   supported by an independent basis as to each of the

6   essential elements of the offense.

7           So I, therefore, respectfully recommend that

8   Judge Weinstein accept Mr. Cotogno's plea of guilty to

9   the single count of the information.

10          So we have the sentencing date as November 18,

11  2019 at 10:30 a.m.  As I mentioned earlier there will be

12  a pre-sentence report prepared about you.

13          Counsel, do you want to participate in the

14  interview?

15          MR. LaRUSSO:  I would like to be present for

16  that, your Honor, yes.

17          THE COURT:  All right.  So we'll let probation

18  know that you would like to participate.

19          MR. LaRUSSO:  Your Honor, normally if the time

20  permit, I usually ask my client to go over to probation

21  and set up an interview.  His back has been bothering

22  him.  I asked him could he walk over to the office and

23  find his car, he would probably prefer to call them and

24  set it up.  Is it that okay with the court?

25          THE COURT:  Does the government have a view?

Proceedings

1          MR. MOSCOW:  The government has no objection,

2   your Honor.

3          THE COURT:  Just, you have to touch base with

4   them tomorrow.

5          But let me just ask -- I mean, we went over his

6   back trouble.  Is there anything about the pain --

7          MR. LaRUSSO:  No.

8          THE COURT:  -- now that interferes with the

9   ability --

10         MR. LaRUSSO:  It's the walking, Judge, and the

11  standing that would cause the pain.  But sitting down

12  he's able to comprehend all the questions and answer

13  appropriately.  I'm confident of that.

14         THE COURT:  All right.  So I don't know where

15  you are procedurally.  You're on bail right now and

16  there's a bond in place?

17         MR. LaRUSSO:  There was, your Honor.  He was

18  arraigned on a complaint, and I'd ask that the bail

19  conditions remain the same.

20         THE COURT:  All right.  So I didn't go back and

21  look at them, but is there any reason from the government

22  they should change right now?

23         MR. MOSCOW:  No, your Honor.

24         THE COURT:  Okay.  All right, so that will just

25  continue.  If anyone needs for them change, then you

Proceedings

1  should make that application to the judge.

2          Okay.  So in terms of the paperwork, I'm going

3  to give the original plea agreement back to the

4  government.  We're going to file the information, right,

5  and we'll take the other paperwork.

6          Is there anything else we should put on the

7  record here today?

8          MR. MOSCOW:  Nothing from the government,

9  your Honor.

10          MR. LaRUSSO:  I'm sorry, Judge.

11          THE COURT:  Is there anything else we should

12  put on the record here today?

13          MR. LaRUSSO:  No, thank you, your Honor.

14          THE COURT:  All right, thank you.

15          MR. LaRUSSO:  Thank you, your Honor.

16          MR. MOSCOW:  Thank you very much.

17          (Matter concluded as of this date)

18                      -o0o-

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this 1st day of September, 2019.



Rosalie Lombardi
Transcription Plus II